IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JUDITH SCHAEFER-CONDULMARI      :          CIVIL ACTION
                                :
     v.                         :
                                :
US AIRWAYS GROUP, INC.          :
d/b/a US AIRWAYS                :          NO. 09-1146


MEMORANDUM

McLaughlin, J.                               December 8, 2009


In this action, plaintiff Judith Schaefer-Condulmari,
seeks to recover for personal injuries that she suffered on a US
Airways flight from Rome to Philadelphia.  She alleges that she
suffered a severe allergic reaction when, unbeknownst to her, she
was served an ordinary airplane meal, rather than the gluten-free
meal that she had requested.  The plaintiff filed suit in the
Philadelphia Court of Common Pleas, alleging negligence and
failure to comply with applicable state and federal laws and
regulations.  Compl. ¶ 33.

The defendant US Airways Group, Inc. ("US Airways")
removed the case, asserting both diversity and federal question
jurisdiction.  In its notice of removal, US Airways claimed the
complaint presented a federal question because the plaintiff's
claims were completely preempted by the Montreal Convention, the
treaty governing the rights and liabilities of international air
passengers and carriers.

Plaintiff Schaefer-Condulmari filed a motion to remand, and defendant US Airways filed a motion to dismiss. The plaintiff's motion argues that her complaint does not present a federal question because her claims are not governed by the Montreal Convention and that diversity is lacking because US Airways has a principal place of business in Pennsylvania, where the plaintiff is also a citizen. The defendant's motion argues that the plaintiff's complaint must be dismissed because the state law claims it raises are preempted by the Montreal Convention.

After both motions were briefed, the Court held a status conference with the parties. After the status conference, the Court ordered the parties to conduct limited jurisdictional discovery and to make supplemental submissions to the Court.

Now having received and reviewed the parties' supplemental submissions, the Court will deny the plaintiff's motion for remand, finding that, although the Court does not have diversity jurisdiction over this action, it does have federal question jurisdiction because the plaintiff's state law claims are completely preempted by the Montreal Convention. For the same reason, the Court will grant the defendant's motion to dismiss the plaintiff's complaint, but will do so without prejudice to allow the plaintiff to file an amended complaint bringing claims under the Convention.

I.    <u>Factual Background</u>

    A.    <u>The Allegations of the Complaint</u>

        Plaintiff Judith Schaefer-Condulmari is a resident of both Philadelphia, Pennsylvania, and Rome, Italy.  Defendant US Airways is an airline with "its principal place of business located at 111 W. Rios Salado Parkway, Tempe," Arizona, which does continuous and systematic business in Pennsylvania.  Compl. ¶ 1-2.

        On September 9, 2008, Ms. Schaefer-Condulmari was a passenger on US Airlines Flight 919, flying non-stop from Rome, Italy to Philadelphia, Pennsylvania.  Because Ms. Condulmari suffers from a severe allergy to wheat, flour, and gluten, she had requested a gluten-free meal when she booked her flight.  She re-confirmed that she would receive a gluten-free meal upon check-in and again upon boarding the flight.  Compl. ¶¶ 6-10.

        Despite her precautions, Ms. Schaefer-Condulmari was not served her requested gluten-free meal.  After taking a few small bites, she suffered a severe allergic reaction and went to anaphylactic shock.  The flight attendants allegedly delayed helping her, but a fellow passenger who was a nurse administered a cortisone shot.  Ms. Schaefer-Condulmari spent the remaining five hours of the flight lying in the back of the plane "in a life threatening state."  In addition to suffering a severe allergic reaction as a result of being served the incorrect meal,

Ms. Schaefer-Condulmari also alleges she suffered post-traumatic stress, emotional distress, and mental anguish; lost wages; and loss of the pleasures of life. Compl. ¶¶ 10-31.

Ms. Schaefer-Condulmari's complaint contains one count, which alleges that her injuries were caused by the defendant's "careless, negligent, grossly careless, and reckless conduct." Compl. ¶ 33. One specific example of such conduct given in the complaint is that the defendant failed "otherwise to comply with the applicable laws and regulations of [ ] Pennsylvania and the applicable Federal laws and regulations." Id. at ¶ 33(f).


B.    Evidence from Affidavits and Jurisdictional Discovery

Defendant U.S. Airways has filed an affidavit from its claims manager, stating that US Airways is incorporated in Delaware and that its principal place of business is 111 W. Rio Salado Parkway, Tempe, Arizona. The affidavit also states that US Airways maintains its corporate headquarters and executive offices in Phoenix, Arizona, and that, although US Airways conducts business in Pennsylvania, that state is not its principal place of business. Aff. of Stacy Riggs (Docket No. 14).

US Airways has also filed a supplemental submission, attaching and summarizing the deposition of the plaintiff taken on jurisdictional issues. At deposition, Ms. Schaefer-Condulmari

testified that she was born in the United States and is a United States citizen, but that she has lived in Italy since 1976, where she is classified as a "Permanent Resident."  Ms. Schaefer-Condulmari currently rents a residence in Rome and owns a home in Anzio.  She is married to an Italian citizen and her two sons were born in Italy.  Her husband and children have Italian passports; Ms. Schaefer-Condulmari has a U.S. passport. Deposition of Judith Schaefer-Condulmari ("Pl. Dep."), Ex. A. to Defs. Supplemental Submission, at 8-9, 14-16, 20, 24-25, 41, 43-44.

Ms. Schaefer-Condulmari owns her own business, USA Domani, which does immigration work.  USA Domini is incorporated in Italy and has two part-time Italian employees.  Ms. Schaefer-Condulmari does not do any work related to her business in the United States.  Pl. Dep. at 25-27.

Ms. Schaefer-Condulmari is eligible to vote in Italy and has voted in local elections there.  She files her personal income tax returns in Italy and has not filed a U.S. tax return in the last ten years.  Ms. Schaefer-Condulmari has three bank accounts in Italy and one in the United States.  The bank account in the United States was opened after the deaths of her parents for the purpose of receiving funds from their estate.  Ms. Schaefer-Condulmari withdraws money from that account in Italy. Pl. Dep. at 19-23, 27-28.

Ms. Schaefer-Condulmari travels to the United States to visit her family, but after each visit returns "home."  From December 2008 through April 2009, Ms. Schaefer-Condulmari rented a temporary apartment in Philadelphia under a three-month lease, while she received medical treatment in the United States.  During those three months she traveled back and forth to Italy three or four times.  Pl. Dep. at 11-12, 36.

While renting the apartment in Philadelphia, Ms. Schaefer-Condulmari obtained a Pennsylvania drivers licence and voter registration.  She testified that she did this in order to obtain photo identification with a U.S. address and to allow her to drive while staying in Pennsylvania.  After April 2009, when visiting the United States, Ms. Schaefer-Condulmari now stays with family.  Pl. Dep. at 10-13, 28-33, 42-43.

II.  <u>Analysis</u>

Ms. Schaefer-Condulmari has moved to remand this case to state court, and US Airways has moved to dismiss.  Because the motion to remand implicates the Court's subject-matter jurisdiction, the Court must resolve it before addressing the defendant's motion.  <u>In re Hechinger Inv. Co. of Del., Inc.</u>, 335 F.3d 243, 249 (3d Cir. 2003) ("When subject matter jurisdiction is at issue, a federal court is generally required to reach the jurisdictional question before turning to the merits.") (citing

<u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94-95 (1998)).

A.   <u>Diversity Jurisdiction</u>

In its supplemental submission on jurisdiction, US Airways concedes that diversity jurisdiction does not exist over this action.  The Court agrees.

The affidavit provided by US Airways establishes that it is a Delaware corporation with a principal place of business in Arizona.  Under 28 U.S.C. § 1332(c)(1), it is therefore a citizen of those two states.

Unlike a corporation, an individual can be considered a citizen only of one jurisdiction at a time.  <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 318 (2006).  For purposes of diversity jurisdiction, "[c]itizenship is synonymous with domicile and the domicile of an individual is his true, fixed and permanent home and place of habitation."  <u>McCann v. Newman Irrevocable Trust</u>, 458 F.3d  281, 286 (3d Cir. 2006) (internal quotation omitted). Domicile is established by two elements:  a person's physical presence in a place and the intent to remain there indefinitely. <u>Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 48 (1989); <u>McCann</u>, 458 F.2d at 286 (citing <u>Krasnov v. Dinan</u>, 465 F.2d 1298 (3d. Cir. 1972)).

Here, Ms. Schaefer-Condulmari's deposition testimony establishes that her domicile is Italy. Italy is the country where she has lived for the past thirty-three years, where she raised her family, and where she owns a business and pays her taxes. Although Ms. Schaefer-Condulmari stayed for an extended visit in Philadelphia from December 2008 through April 2009 for medical treatment, and rented an apartment in the city during that time, this did not change her domicile. During her stay, Ms. Schaefer-Condulmari did not intend to remain indefinitely in Philadelphia.

Because Ms. Schaefer-Condulmari is domiciled in Italy, but also a citizen of the United States, she cannot be subject to diversity jurisdiction in the federal courts. An American citizen domiciled abroad is not considered a citizen of any U.S. state. A suit involving such a "stateless" person cannot satisfy the usual requirement for diversity jurisdiction that a suit be between "citizens of different States," 28 U.S.C. § 1332(a)(1) and cannot meet the requirement for alienage diversity jurisdiction that a suit be between "citizens of a State and citizens or subjects of a foreign state," § 1332(a)(2). Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 828 (1989); Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 184 (3d Cir. 2008); Frett-Smith v. Vanterpool, 511 F.3d 396, 400 (3d Cir. 2008).

B.    Federal Question Jurisdiction

The plaintiff's complaint brings state law claims of negligent and reckless conduct. Defendant US Airways contends that the complaint nonetheless presents a federal question because the state law claims are "completely preempted" by the Montreal Convention.

a    The Montreal Convention

The Montreal Convention[1] is a treaty of the United States, effective November 4, 2003, which governs the rights and liabilities of international air carriers and passengers. The Montreal Convention supercedes and replaces the earlier Warsaw Convention.[2] See Sompo Japan Ins. Co. v. Nippon Cargo Airlines Co., Ltd., 522 F.3d 776, 779-781 (7th Cir. 2008) (discussing the history of the Warsaw and Montreal Conventions).

The Montreal Convention covers "all international carriage of persons, baggage or cargo performed by aircraft for reward."  MC Art. 1(1).  Liability for personal injury is

---

[1]    Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) (hereinafter "Montreal Convention" or "MC").

[2]    Multilateral Convention and Additional Protocol between the United States and Other Powers Relating to International Air Transportation, Concluded at Warsaw, October 12, 1929; Proclaimed October 29 1934, reprinted at 49 Stat. 3000 et seq. (herinafter "Warsaw Convention").

governed by Article 17.  It provides that a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking."  In interpreting essentially identical language in the predecessor Warsaw Convention, the United States Supreme Court held that the reference to injury caused by an "accident" required that a plaintiff seeking to recover for bodily injury under the Convention must establish that her injury resulted from an "an unexpected or unusual event or happening that is external to the passenger."  <u>Air France v. Saks</u>, 470 U.S. 392, 396, 405 (1985).[3]

Liability under the Montreal Convention is also subject to a form of comparative negligence set out in Article 20. Article 20 provides that, if the injured party or the claimant commits a negligent or wrongful act or omission that causes or contributes to the harm at issue, then the carrier shall be "wholly or partially exonerated from its liability to the claimant" to the extent that the negligent or wrongful act contributed to the damage.

---

[3]     The Explanatory Note to the Montreal Convention states that "it is expected" that the provision of Article 17 governing carrier liability for passenger injury and death will be "construed consistently with the precedent developed under the Warsaw Convention and its related instruments."  S. Treaty Doc. No. 106-45, 1999 WL 33292734 at *16.

Once a carrier is found liable under the Montreal
Convention, it is strictly liable for any damages up to a
specified amount.  For liability for bodily injury or death, that
amount is 100,000 in "Special Drawing Rights."[4]  MC Art. 21(1).
A carrier can avoid damages for bodily injury or death above that
specified limit if it can prove either 1) that the damage was not
due to its or its agents' negligence or other wrongful acts or
omissions or 2) that the damage was "solely due" to the
negligence or other wrongful acts or omissions of a third party.
MC Art. 21(2).  The Convention also provides that punitive,
exemplary, or other non-compensatory damages are not recoverable.
MC Art. 29.

The Montreal Convention contains an exclusivity
provision, Article 29, which provides that its conditions and
limitations of liability govern in any case seeking damages for
carrying passengers, baggage or cargo:

> In the carriage of passengers, baggage and
> cargo, any action for damages, however
> founded, whether under this Convention or in
> contract or in tort or otherwise, can only be
> brought subject to the conditions and such

---

[4]     A Special Drawing Right "is an artificial currency,
established by a 'basket' of global currencies (the U.S. dollar,
the euro, the Japanese yen and the British pound)" whose value
fluctuates depending on the global currency markets and is
published daily by the International Monetary Fund.  Sompo Japan,
522 F.3d at 779 n.3.  Article 22(1) of the Montreal Convention
provides that, in judicial proceedings, Special Drawing Rights
are to be converted into applicable national currencies at the
date of the judgment.

> limits of liability as are set out in this
> Convention without prejudice to the question
> as to who are the persons who have the right
> to bring suit and what are their respective
> rights. . . .

MC Art. 29.  This exclusivity language was taken from the earlier

Montreal Protocol No. 4 to the Warsaw Convention.  Explanatory

Note to MC Art. 29.  Montreal Protocol No. 4, drafted in 1975 and

ratified by Congress in 1998, amended the Warsaw Convention to

add an express exclusivity clause.

Although the United States Supreme Court has yet to

interpret the exclusivity clause in the Montreal Convention, it

addressed the exclusivity of the Warsaw Convention in El Al

Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155 (1999).

In El Al, a passenger sued for psychological injuries that

allegedly resulted from an intrusive bodily security search

before boarding an airplane.  The passenger's injury occurred

before the United States had ratified Montreal Protocol No. 4, at

a time when the Warsaw Convention contained no exclusivity

clause.  The passenger conceded that his injuries were not caused

by an "accident" within the meaning of the Warsaw Convention and

that he could not recover under the Convention, but he argued

that, because the Convention offered him no recovery, it should

not preclude him from recovering under state tort law.

The United States Supreme Court rejected this argument,

holding that, even without an express exclusivity clause, the

Warsaw Convention precluded alternative causes of action for injuries suffered while boarding or while on board an aircraft, even if the Convention itself would not allow recovery.  El Al, 525 U.S. at 161.  The Court held that allowing state law causes of action for injuries within the scope of the Convention would "undermine the uniform regulation of international air carrier liability that the Warsaw Convention was designed to foster." Id.  Accordingly, "recovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking . . . if not allowed under the [Warsaw] Convention, is not available at all."  Id. (internal quotation and citation omitted).  The Court found that Montreal Protocol No. 4, which had been ratified by the time El Al was decided, "merely clarifie[d], it d[id] not alter, the Convention's rule of exclusivity."  Id., 525 U.S. at 174.

Under the reasoning of El Al, the Montreal Convention also precludes alternative causes of action.  As the replacement for the Warsaw Convention, the Montreal Convention is similarly designed to foster a uniform regulation of international air carrier liability.  Just as a need to avoid interference with this purpose led the El Al Court to interpret the Warsaw Convention as exclusive, even before the addition of the exclusivity language of Montreal Protocol No. 4, the same rationale requires that the Montreal Convention be interpreted to

have a similar underlying pre-emptive effect, even without the express exclusivity language contained in Article 29. The Montreal Convention, like the Warsaw Convention, will therefore bar any claim outside its terms for personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking.

The exclusivity clause of Article 29 of the Montreal Convention does leave some issues for local law. Article 29 expressly provides that local law will decide "who are the persons who have the right to bring suit and what are their respective rights." Other provisions of the Montreal Convention also defer to local law. Procedural issues are to be determined "by the law of the court seised of the case." MC Art. 33(4). The same law governs the method of calculating the Montreal Convention's two-year statute of limitations. MC Art. 35(2). The Convention also provides that subrogation issues are left for local law. MC Art. 33(4), 37; Sompo Japan, 522 F.3d at 781.

      b.   Complete Preemption

The doctrine of complete preemption "holds that certain federal laws so thoroughly occupy a field of regulatory interest that any claim brought within the field, however stated in the complaint, constitutes a federal claim and therefore bestows a federal court with jurisdiction." Wirth v. Aetna U.S.

_Healthcare_, 469 F.3d 305, 307 (3d Cir. 2006).  Complete preemption is therefore an exception to the long-standing "well-pleaded complaint" rule, which states that federal question jurisdiction must be determined by looking at the allegations of the plaintiff's complaint and cannot be based on an anticipated defense, even a defense of federal preemption.  _Franchise Tax Bd. v. Constr. Lab. Vacation Trust_, 463 U.S. 1, 9-11 (1983). Complete preemption exists only where "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"  _Caterpillar, Inc. v. Williams_, 482 U.S. 386, 393 (1987) (citing _Metropolitan Life Ins. Co. v. Taylor_, 481 U.S. 58, 65 (1987)).

The United States Supreme Court first articulated the doctrine of complete preemption in _Avco Corp. v. Aero Lodge No. 735, Int'l Assoc. of Machinists_, 390 U.S. 557 (1968).  _Avco_ held that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, completely preempted a state law action seeking to enjoin a strike and allowed it to be removed to federal court. _Id._, 390 U.S. at 560.  The Supreme Court subsequently found complete preemption under § 502(a) of the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1132.  _Met. Life_, 481 U.S. at 65.  Both _Avco_ and _Met. Life_ emphasized that, in addition to simply preempting conflicting state law claims, the

LMRA and ERISA contained enforcement provisions providing a federal remedy.  Met Life also found an express congressional intent to make actions covered by ERISA's civil enforcement provision removable.  Met Life, 481 U.S. at 66.

Based on the reasoning of Met Life and Avco, the United States Court of Appeals for the Third Circuit articulated a two-part test for determining if a statute has sufficient preemptive force to result in complete preemption:  the statute must contain civil enforcement provisions "within the scope of which the plaintiff's state claim falls"  and there must be "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law."  RR. Labor Exceecutives Ass'n v. Pittsburgh & Lake Erie R. Co., 858 F.2d 936, 941 (3d Cir. 1988) (internal quotation and citation omitted); see also Gopel v. Nat'l Postal Mail Handler's Union, 36 F.3d 306, 311 (3d Cir. 1994) (applying the test to find no complete preemption under Federal Employees Health Benefits Act); Allstate Ins. Co. v. 65 Sec. Plan, 879 F.2d 90, (3d Cir. 1990) (applying the test to find no complete preemption under ERISA for contribution claim not within the scope of the civil enforcement provision).

The second part of the RR. Labor test has been effectively overruled by the most recent United States Supreme Court decision on complete preemption, Beneficial Nat. Bank v. Anderson, 539 U.S. 1 (2003).  In Beneficial, the Supreme Court

considered whether state law claims of usury against a nationally-chartered bank were preempted by the National Bank Act and whether those state law claims were so completely preempted that the action asserting them could be removed to federal court. The National Bank Act sets a limit on the interest rates that can be charged by a national bank and provides a private right of action for usury if those rates are exceeded.  The Supreme Court found that the Act "unquestionably" preempts any common law or state statutory rule that would seek to impose civil liability upon a national bank for charging interest allowed by the Act and would provide a national bank with a "complete defense" to such a claim.  <u>Beneficial</u>, 539 U.S. at 3-4, 9.

Reaffirming that the existence of a preemption defense is not, by itself, enough to allow removal, the Supreme Court considered whether the National Bank Act so "completely preempted" the state law claims that they could be said to arise under federal law.  The appellate court below had held that the Act did not give rise to complete preemption because the relevant provisions of the Act did not evince a "clear congressional intent to permit removal."  <u>Beneficial</u>, 539 U.S. at 5 (citing <u>Anderson v. H. & R. Block, Inc.</u>, 287 F.3d 1038, 1048 (11th Cir. 2002)).  The Supreme Court reversed, holding that the "proper inquiry" for purposes of determining whether complete preemption exists is "whether Congress intended the federal cause of action

-17-

to be exclusive rather than on whether Congress intended that the cause of action be removable."  Id., 539 U.S. at 9 n.5.

The Court found that the National Bank Act created a federal cause of action for usury and set forth the procedures and remedies that governed it.  The Act provided a statute of limitations for such a federal usury claim and prescribed the procedures governing such a claim and the remedies available to borrowers who are charged higher rates.  Id., 539 U.S. at 8-9. The Court found that this cause of action superceded "both the substantive and the remedial provisions of state usury laws" and provided an exclusive federal remedy for such claims.  The Court therefore held that a usury cause of action against national banks arose exclusively under federal law and could be removed. Id., 539 U.S. at 10.

The Supreme Court's decision in Beneficial modifies the test for complete preemption set out by the United States Court of Appeals for the Third Circuit in RR. Labor.  The first prong of the test -- that the statute at issue contain civil enforcement provisions whose scope encompasses the plaintiff's claims -- is unaffected by Beneficial.  The first step of the Supreme Court's analysis in Beneficial, determining whether the plaintiff's claim fell within the scope of the National Bank Act and was preempted, tracks the first prong of the RR. Labor test. The second prong of the RR. Labor test, however -- that there be

a clear indication of Congressional intent to allow removal --
was specifically rejected by the Supreme Court in <u>Beneficial</u>.
Rather than requiring a showing of congressional intent to allow
removal, <u>Beneficial</u> holds that the "proper inquiry" for complete
preemption is whether there is a congressional intent to provide
an exclusive federal remedy.  <u>Id.</u>, 539 U.S. at 9 n.5.

### c.  <u>Complete Preemption under the Montreal Convention</u>

Neither the United States Supreme Court nor the United
States Court of Appeals for the Third Circuit has addressed
whether the Montreal Convention, or its predecessor the Warsaw
Convention, completely preempt state law causes of action.  Other
federal courts that have considered the issue have disagreed as
to whether either Convention completely preempts state law.[5]

---

[5]     <u>Compare</u> <u>Narkiewicz-Laine v. Scandinavian Airlines Sys.</u>,
587 F. Supp. 2d 888 (N.D. Ill. 2008) (holding that the Montreal
Convention does not completely preempt state law claims) <u>and</u>
<u>Serrano v. Am. Airlines, Inc.</u>, 2008 WL 2117239 (C.D. Cal. May 15,
2008) (same) <u>with</u> <u>Jones v. USA 3000 Airlines</u>, 2009 WL 330596
(E.D. Mo. Feb. 09, 2009) (holding that the Montreal Convention
completely preempts state law claims and allows removal) <u>and</u>
<u>Knowlton v. Am. Airlines, Inc.</u>, 2007 WL 273794 (D. Md. Jan. 31,
2007) (same); <u>Compare</u> <u>Husmann v. Trans World Airlines, Inc.</u>, 169
F.3d 1151 (8th Cir. 1999) (holding that the Warsaw Convention
completely preempts state law claims), <u>Schoeffler-Miller v. N.W.</u>
<u>Airlines, Inc.</u>, 2008 WL 4936737 (C.D. Ill. 2008) (same); <u>and</u>
<u>Singh v. N. Am. Airlines</u>, 426 F. Supp. 2d 38 (E.D.N.Y. 2006)
(same) <u>with</u> <u>Nipponkos Ins. Co. v. GlobeGround Servs., Inc.</u>, 2006
WL 2861126 (N.D. Ill. Sept. 28, 2006) (holding that the Warsaw
Convention does not completely preempt state law claims)
(collecting cases).

Those courts that have found no complete preemption under the Montreal Convention have focused on the text of the exclusivity provision in Article 29, which provides that "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, <u>whether under this Convention or in contract or in tort or otherwise</u>, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." MC Art. 29 (emphasis added). These courts interpret this language to mean that the Convention recognizes that claims involving the "carriage of passengers, baggage, and cargo" can be brought either under the terms of the Convention or under state "contract or tort" law and that therefore not all damages actions involving passengers or baggage "arise under" the Convention, as required for complete preemption. <u>See</u> <u>Narkiewicz-Laine</u>, 587 F. Supp. 2d at 890; <u>Serrano</u>, 2008 WL 2117239 at *3. The <u>Narkiewicz-Laine</u> court suggests that, with respect to state law tort claims, the terms of the Montreal Convention act as "an affirmative defense," limiting the defendant's liability for damages. 587 F. Supp. 2d at 890.

This interpretation is in tension with the Explanatory Notes to the Montreal Convention, provided by the Executive Branch to the United States Senate when the Convention was submitted for ratification. The Explanatory Note to Article 37 states that it "provides that the Convention and its limits shall

be applicable to all actions for damages arising in the carriage of passengers, baggage, and cargo, however such claims may be founded."  S. Treaty Doc. No. 106-45, 1999 WL 33292734 at *22. As an example of the Article's operation, the Explanatory Notes posit a claim arising from a flight involving "code-sharing," in which different carriers contract with and transport a passenger. In such a case, the Explanatory Note states that "neither the contracting carrier, the actual carrier, nor their servants or agents could be held liable outside the Convention under any alternative tort or contract law theories for matters such as, for example, negligent selection of, or failure to properly audit or monitor the safety of, the actual carrier."  Id.

The Explanatory Notes strongly suggest that the reference in Article 29 to claims "in contract or in tort or otherwise" is not intended to reflect that such claims have an independent existence outside the terms of the Convention.  The language of Article 29 is entirely consistent with interpreting the Convention to completely preempt claims that are initially couched, like plaintiff Schaefer-Condulmari's here, in terms of contract or tort, but where recovery can only be obtained under the terms of the Convention.

Considering the text of Article 29 and the requirements for complete preemption set out in Beneficial Nat. Bank, the Court finds that the Montreal Convention completely preempts

state law claims, like this one, involving a passenger's bodily injury suffered on board an international flight. The two requirements for complete preemption are that the Convention contain civil enforcement provisions whose scope encompasses the plaintiff's claims and that there be congressional intent that the Convention provide an exclusive federal remedy. Beneficial, 539 U.S. at 8-9; see also RR. Labor, 858 F.2d at 941.

The first requirement is met here. The Montreal Convention imposes liability upon a carrier for a passenger's bodily injury or death sustained from an accident "on board the aircraft or in the course of any of the operations of embarking or disembarking." MC Art. 17(1).[6] Here, Ms. Schaefer-Condulmari suffered her injuries while on board the defendant's aircraft and her claims, therefore, fall within the scope of the Convention.

The second requirement for complete preemption is also met by the Montreal Convention. Article 29 of the Convention evinces the drafters' intent to make it the exclusive remedy for any claims within its scope. Article 29 makes clear that any

_____

[6]     Like the National Bank Act in Beneficial, the Montreal Convention sets out procedures and remedies governing the liability it imposes. The Convention sets out a statute of limitations and specifies the damages it imposes and the means by which a carrier can exonerate itself from liability or limit its damages. Although the Convention leaves some issues to be decided by the law of the court hearing the claim, those issues are expressly delegated under the Convention's terms and involve ancillary issues. The core issues of whether and to what extent liability is to be imposed are governed solely by the terms of the Convention.

action for damages arising from "the carriage of [international] passengers . . . can only be brought subject to" the Convention's terms.  MC Art. 29.  As discussed earlier, the reference in Article 29 to claims "in contract or in tort or otherwise" is best interpreted to mean, not that such claims can exist outside the Convention, but rather that such claims, however formulated, "can only be brought" under the Convention's terms.

In her motion for remand, Ms. Schaefer-Condulmari argues that her claims fall outside the Montreal Convention because her injuries were caused by an allergic reaction and not by an "accident."  (As discussed earlier, under the reasoning of Air France, 470 U.S. 392, a passenger's injury must be the result of an "accident" for a claimant to recover for bodily injury under the Convention.)  The plaintiff's argument is misplaced.  Even if Ms. Schaefer-Condulmari's injuries are not the result of an "accident," her claims still fall within the scope of the Convention because she seeks damages arising from bodily injury suffered on board an international flight.  Under Article 29, any such action "can only be brought subject to" the Convention's terms.  Accordingly, if Ms. Schaefer-Condulmari cannot establish that her injuries were the result of an accident, as required for

liability under the Convention, then she will not be able to recover damages at all.[7]

Having found that the Montreal Convention completely preempts state law and that Ms. Schaefer-Condulmari's claims in this action fall within the scope of the Convention, the Court finds that the state law claims pled in the Complaint "arise under" federal law and support federal question jurisdiction. US Airways' removal of the complaint was therefore proper, and the plaintiff's motion to remand will be denied.

C.   The Motion to Dismiss

US Airways has moved to dismiss the complaint on the grounds that its claims are preempted by the Montreal Convention. Ms. Schaefer-Condulmari contends that her claims are not preempted, but asks in the alternative, if US Airways' motion to dismiss is granted, for leave to amend her complaint to bring a

_____

[7]   Ms. Schaefer-Condulmari's argument that her allergic reaction cannot be considered the result of an "accident," as term is used in the Montreal Convention, may also be incorrect on the merits.  See Olympic Airlines v. Husain, 540 U.S. 644, 652-53, 657 (2004) (holding that a severe allergic reaction suffered by an asthmatic passenger could be the result of an "accident" within the meaning of the Warsaw Convention, where the airline refused repeated requests by the passenger to be reseated away from the smoking section and this refusal was unusual and unexpected in light of the relevant industry standard and company policy).  The Court takes no view as to whether, in light of Olympic Airlines, the plaintiff could adequately plead or prove that her injury was the result of an "accident" as defined in the Convention.

claim under the Montreal Convention. US Airways has stated in reply that it has "no objection to plaintiff's request for leave to amend her complaint to assert a claim under the Montreal Convention," but argues that, because Ms. Schaefer-Condulmari has argued that her injury was not the result of an "accident," as required for recovery under the Convention, any such amendment would be futile. Def. Reply Br. at 2.

The Court will grant the defendant's motion to dismiss. As discussed above, the Montreal Convention provides the exclusive means to impose liability upon an airline for bodily injury suffered by a passenger while on board an aircraft on an international flight. MC Art. 29. Ms. Schaefer-Condulmari's state law claims for the allergic reaction she suffered on board her flight from Rome to Philadelphia are therefore covered by the Convention and must be brought under its terms, not under state law.

The Court's dismissal, however, will be without prejudice, and the Court will grant Ms. Schaefer-Condulmari leave to file an amended complaint bringing a claim under the Montreal Convention. Ms. Schaefer-Condulmari's unsuccessful argument in her opposition to the motion to dismiss that her injury was not the result of an "accident" does not estopp or otherwise prevent her from taking a contrary position in a subsequent amended complaint. From the facts alleged, the Court cannot say at this

time that Ms. Schaefer-Condulmari will be unable to state a claim under the Montreal Convention.  See Olympic Airlines, 540 U.S. at 652-53, 657.  The proposed amendment to bring claims under the Convention is therefore not futile, and leave to amend will be granted.

An appropriate Order will be entered separately.