```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JUDITH SCHAEFER-CONDULMARI      :     CIVIL ACTION
                                :
          v.                    :
                                :
US AIRWAYS GROUP, LLC           :     NO. 09-1146
```

MEMORANDUM

McLaughlin, J.                                        July 17, 2012

      The plaintiff brings this suit after suffering an allergic reaction to a meal served aboard the defendant's airline.  As a result of the allergic reaction, the plaintiff alleges physical and mental injuries, including post-traumatic stress disorder ("PTSD").  Currently before the Court are four motions filed by the defendant.  The Court will deny the defendant's motion for summary judgment; grant in part and deny in part the defendant's Daubert motion; grant the defendant's motion to strike; and grant in part and deny in part the defendant's motion to compel.

I.    Summary Judgment Record

      The plaintiff is allergic to gluten.  Pl. Br., Ex. A (Pl. Dep.) at 30-32.  On September 9, 2008, the plaintiff was traveling on the defendant's airline from Rome, Italy to Philadelphia, Pennsylvania.  Def. Stmt. of Undisputed Fact ¶ 2;

Pl. Resp. Stmt. ¶ 2. She was served a meal containing gluten while on board. Def. Stmt. ¶ 6; Pl.'s Resp. Stmt. ¶ 6.

After taking a few bites of the meal, the plaintiff suffered an allergic reaction, developed hives and experienced difficulty breathing. Pl. Br., Ex. D at 87. Eventually the plaintiff was brought to the back of the plane where a flight attendant and a nurse on board the flight attended to her, injuring her leg in the process. Id. at 106-07.

The parties dispute whether the plaintiff ordered a gluten-free meal for the September 9, 2008 flight. The booking record for the September 9, 2008 flight shows that a vegetarian meal was ordered. Def. Br., Ex. D. The plaintiff was served a vegetarian meal on board the flight. Def. Br., Ex. E, 27-28.

The plaintiff argues that the booking record is mistaken. Since 1977, the plaintiff has "always" ordered a gluten-free, wheat-free meal when she travels. Id. at 30-32. Although the plaintiff could not remember if she booked this flight, the booking record for the September 9, 2008 flight shows that the plaintiff booked the flight. Def. Br., Ex. A at 45-46; Pl. Supp. Br., Ex. A at 59. Booking records from 2007 through 2009 show that the plaintiff usually ordered a gluten-free meal when she ordered a meal from the defendant. Def. Supp. Br. at 8-9. In addition, the plaintiff informed Linda Fischer, a flight

attendant on board the flight, that she needed a gluten-free meal.[1]  Def. Br., Ex. E at 26-28; Pl. Supp. Br., Ex. H at 118.

II. <u>Motion for Summary Judgment</u>[2]

The plaintiff's claims are governed by the Convention for the Unification of Certain Rules for International Carriage by Air ("the Montreal Convention").[3]  <u>See</u> Montreal Convention,

---

[1] The record also contains a statement by Linda Fischer that the plaintiff said she ordered a gluten-free meal. Def. Br., Ex. E at 27. The Court has not heard an argument that would make this statement admissible against the defendant for the truth of what the plaintiff ordered. The Court therefore does not consider that statement here.

[2] A party is entitled to summary judgment if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, which may be satisfied by demonstrating the party who bears the burden of proof lacks evidence to support his case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law and "genuine" if a reasonable jury could find for the nonmoving party based on the evidence presented on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In making its determination, the court must consider the evidence in a light most favorable to the nonmoving party. <u>Sheridan v. NGK Metals Corp.</u>, 609 F.3d 239, 251 n.12 (3d Cir. 2010). Once a properly supported motion for summary judgment is made, the burden of production then shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 250.

[3] The Montreal Convention modernized and consolidated an earlier convention signed in 1929 and amended by several agreements (the "Warsaw Convention"). <u>See</u> Multilateral Convention and Additional Protocol between the United States and Other Powers Relating to International Air Transportation, Concluded at Warsaw, October 12, 1929; Proclaimed October 29, 1934, <u>reprinted at</u> 49 U.S.C. § 40105 note; Montreal Convention

May 28, 1999, ICAO Doc. 9740, S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

The defendant argues that serving the plaintiff a vegetarian meal was not an "accident" as required by the Convention to support a claim of liability, because she ordered a vegetarian meal. In addition, the defendant argues that it is entitled to summary judgment on the plaintiff's claims of post-traumatic stress disorder ("PTSD"), because the Convention does not provide for recovery of mental injuries.

    A.   <u>Accidents Under the Montreal Convention</u>

Chapter III, Article 17 of the Montreal Convention says:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that <u>the accident which caused the death or injury</u> took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

---

explanatory note; <u>Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.</u>, 522 F.3d 776, 780-81 (7th Cir. 2008). The Montreal Convention was ratified by the U.S. Senate on July 31, 2003 and became effective on September 5, 2003. <u>Ehrlich v. Am. Airlines, Inc.</u>, 360 F.3d 366, 371 n.4 (2d Cir. 2004). Although the Montreal Convention is an entirely new treaty, the language relevant to this case is similar to the earlier Warsaw Convention.

Montreal Convention Art. 17 (emphasis added).[4]  The Montreal Convention, like its predecessor, does not define the term "accident."

The Supreme Court defined the term accident in <u>Air France v. Saks</u>.  470 U.S. 392, 394-95 (1985).  In <u>Saks</u>, a passenger alleged that she suffered a hearing loss following the plane's normal descent to its destination.  Because the treaty requires that an accident cause the alleged injury, the Court concluded that liability "arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger."  <u>Id</u>. at 405.  This definition of an accident "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries."  <u>Id.</u>  "Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger."  <u>Id.</u> at 406.

In 2004, the Court reaffirmed its holding in <u>Saks</u>.  <u>Olympic Airways v. Husain</u>, 540 U.S. 644, 653-54 (2004).  In <u>Husain</u>, the Court held that a flight attendant's refusal to help an asthmatic passenger avoid exposure to cigarette smoke in the

---

[4] The earlier Warsaw Convention said: "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, <u>if the accident which caused the damage so sustained</u> took place on board the aircraft . . . ."  (emphasis added).

5

cabin qualified as an accident.  The Court held that an accident had occurred because "the carrier's unusual and unexpected refusal to assist a passenger [by moving his seat] is a link in a chain of causation resulting in a passenger's pre-existing medical condition begin aggravated by exposure to a normal condition in the aircraft cabin."  Id. at 646.

If a passenger is served a meal or drink that is unexpected or contrary to his or her order, food service on a flight can be the basis of an accident under the Montreal Convention.  See, e.g., Horvath v. Deutsche Lufthansa, AG, No. 02-3269, 2004 WL 486976 (S.D.N.Y Mar. 12, 2004) (passenger served salmon despite informing airline of her allergy to fish); Scala v. Am. Airlines, 249 F. Supp. 2d 176, 177 (D. Conn. 2003) (passenger served cranberry juice with alcohol instead of plain cranberry juice ordered, exacerbating existing heart condition); Bouso v. Iberia Lineas Aereas De Espnana, No. 69-9094, 1998 WL 148422, at *2 (S.D.N.Y Mar. 27, 1998) (passenger injured by foreign object in an in-flight meal).

There is no accident when the passenger is served what he expected to be served.  In Farra, a passenger requested that his meal be served immediately after take-off to avoid illness. Farra v. Am. Airlines, No. 00-67, 2000 WL 862830 (E.D. Pa. June 28, 2000).  Sixteen days before his flight, he was informed by a supervisor at American Airlines that this request would not be

6

accommodated, and his meal was served at the same time as the other passengers. The Court held that the meal service was not an accident because his meal was served, as expected, at the same time as other passengers. "[E]xperiencing the expected is not 'an unexpected or unusual event.'" Id. at *3.

Therefore, if the plaintiff requested a gluten-free meal but was served a meal with gluten, an accident occurred. If the plaintiff requested a vegetarian meal, and that is what she was served, it is not unexpected or unusual that she was served that meal, and there was no accident.

Taking the evidence in the light most favorable to the plaintiff, there is enough of a dispute on the question of whether the plaintiff ordered a gluten-free meal that the Court must deny summary judgment. The plaintiff testified that she always orders a gluten-free meal. This testimony could be admissible as pattern or practice evidence, when combined with booking records showing the plaintiff booked this flight and that she has requested gluten-free meals in the past. There is also a dispute on whether the plaintiff informed the defendant's employees on board the flight that she needed to be served a gluten-free meal and if this request was accommodated.

Because a disputed issue of fact exists on whether the plaintiff ordered or requested a gluten-free meal for the flight, the Court will deny the defendant's motion for summary judgment

on this ground.  This denial is without prejudice to the defendant's ability to raise this argument after all the evidence has been presented at trial.

    B.    <u>Recovery for Mental Injury</u>

It is uncontested that recovery for <u>purely</u> mental injures is barred by the Montreal Convention.  <u>Eastern Airlines, Inc. v. Floyd</u>, 499 U.S. 530, 534 (1991).  In <u>Floyd</u>, the plaintiffs brought suit for physic trauma experienced when their plane lost its engines and prepared to land in the ocean before the engine power was restored.  They did not suffer either physical injuries or physical manifestation of their psychic injuries.  <u>Id.</u> at 533, 552-53.  The Supreme Court held that "Article 17 does not allow recovery for <u>purely</u> mental injuries." <u>Id.</u>, 499 U.S. at 534 (emphasis added); <u>see also</u> <u>El Al Israel Airlines, Ltd. v. Tseng</u>, 525 U.S. 155, 172 (1999) ("[The passenger] sustained no 'bodily injury' and could not gain compensation under Article 17 for her <u>solely</u> psychic or psychosomatic injuries." (emphasis added)).  The Court of Appeals for the Third Circuit has held that there is likewise no recovery for physical manifestations of a purely mental injury.  <u>Terrafranca v. Virgin Atl. Airways Ltd.</u>, 151 F.3d 108, 111 (3d Cir. 1998).

None of these cases, however, bar recovery under the Montreal Convention for mental injury caused by physical injury.

Courts generally hold that mental injuries can be recovered "to the extent the distress is caused by the physical injuries sustained." In re Air Crash at Little Rock Ark., 291 F.3d 503, 509 (8th Cir. 2002) (collecting cases). For example, in Erlich, plaintiffs alleged both mental and physical injuries after their plane overshot the runway and was abruptly stopped. 360 F.3d 366 (2d Cir. 2004). In a thorough analysis of the text and history of the treaty, the Court of Appeals for the Second Circuit held that "[o]ur exhaustive examination . . . leads us to conclude that a carrier may be held liable under Article 17 for mental injuries only if they are caused by bodily injuries." Id. at 400.

The Court of Appeals for the Third Circuit has not ruled on this issue specifically, but favorably cited Erlich in an unpublished opinion. In Bobian, the court held that plaintiffs could not claim a physical injury by arguing that their PTSD changed the chemistry of their brains. Bobian v. Czech Airlines, 93 F. App'x 406 (3d Cir. 2004). The court said, "our view is supported by a very recent exhaustive and scholarly decision [in Ehrlich], where Judge Meskill held that a carrier may be liable under Article 17 for mental injuries only if they are caused by bodily injuries." Id. at 408 (emphasis added).[5]

---

[5] The defendant points to language in the Bobian opinion rejecting the argument that PTSD can be the basis of a physical injury. See, e.g., id. at 407 ("Article 17 allows recover for

9

Thus to the extent the plaintiff can show that any mental distress was caused by the physical injuries she alleges, those injuries could be recoverable under the Montreal Convention. The Court will deny the defendant's motion for summary judgment on this ground.

III. Daubert Motion to Exclude Expert Testimony

The defendant moves to exclude some testimony of the plaintiff's expert witnesses, Dr. Tereo and Dr. Phillips. The defendant argues that both witnesses should be prevented from testifying as to the plaintiff's PTSD and that Dr. Phillips should be barred from testifying about the flight attendant's treatment of the plaintiff.

Federal Rule of Evidence 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to give opinion testimony. Fed. R. Evid. 702. Under this rule, the expert must present "scientific, technical, or other specialized knowledge" that "will help the trier of fact

---

'bodily injury' but not for mental, psychic or emotional injury.") ("We have specifically rejected as Warsaw-compensable injuries post-traumatic stress disorder and related emotional maladies . . . ."). In the context of the case, it is clear the court is referencing the earlier opinions cited above addressing purely mental injuries. The lower court in Bobian adopted the view that plaintiffs can recover for emotional harm proximately caused by a physical injury, but found no evidence that the physical injuries in the case caused the emotional ones, and the circuit court did not address that issue. Bobian v. CSA Czech Airlines, 232 F. Supp. 2d 319, 325 n. 11 (D.N.J 2002).

10

to understand the evidence or to determine a fact in issue." Id. at 702(a); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 590-91 (1993).

The trial court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. A district court does this in a two-step inquiry. First, "the proffered 'expert' must be qualified to express an expert opinion." In re TMI Litig., 193 F.3d 613, 664 (3d Cir. 1999). This requirement includes "a broad range of knowledge, skills, and training." Id. (internal quotations omitted). Second, "the proffered expert opinion must be reliable." Id.

### A. Dr. Tereo

Dr. Tereo is a psychoanalyst who opined that the plaintiff suffers from PTSD as a result of her allergic reaction on board the flight. There is no dispute that Dr. Tereo is qualified to express an expert opinion in psychiatry. This inquiry focuses on the second part of the TMI Litigation test, whether Dr. Tereo's testimony is reliable. Factors relevant to that inquiry include: whether the method used a testable hypothesis, whether the method has been subject to peer review, the potential rate of error of the method, what standards govern the technique, the general acceptance of the method, and the non-judicial uses of the method. TMI Litigation, 193 F.3d at 664-65.

The standard for determining reliability "is not that high." Id. at 665. The test is whether the "the particular opinion is based on valid reasoning and reliable methodology." Id.

The defendant argues that the methodology Dr. Tereo used to diagnose the plaintiff is not reliable. Specifically, the defendant argues that Dr. Tereo did not use standardized structured interviews to diagnose the plaintiff, but instead relied upon the plaintiff's self-reporting, and that Dr. Tereo did not rule out other possible causes of the plaintiff's alleged mental injury, such as other past traumatic events. Dr. Tereo made his diagnosis of PTSD based on the Diagnostic and Statistical Manual of Mental Disorder and his thirty five years of clinical practice. Def. Br., Ex. D (Tereo Dep.) at 41-42.

The Court concludes that Dr. Tereo's opinion is reliable. The defendant relies upon medical practice guidelines, rather than expert testimony or case law to argue that failure to consider standardized structured interviews and rule out other possible causes of the diagnosis render Dr. Tereo's opinion unreliable.[6] These are issues more appropriate to cross-

---

[6] The only case the defendant cites to support this argument is Kador v. City of New Rds., where a district court offered a conclusion, without any analysis, that the expert's opinion that the plaintiff suffered from PTSD "and Panic Disorder with Agoraphobia" was "fundamentally unsupported" and therefore unreliable. No. 07-682, 2011 WL 4889102, at * 2 (M.D. La. Oct. 13, 2011).

examination than exclusion under Daubert. The Court, therefore, will deny the Daubert motion as to Dr. Tereo.

    B.   Dr. Phillips

Dr. Phillips is an allergist who concluded that the plaintiff is allergic to wheat and gluten, is suffering from PTSD, and that the defendant inadequately prepared its flight attendants to properly treat the plaintiff. The defendant does not question Dr. Phillips's expertise or testimony in the areas of allergy, immunology, and epidemiology, but argues that he is not entitled to testify beyond those areas. The Court agrees.

Dr. Phillips does not consider himself an expert in the field of psychology, psychiatry, or psychotherapy. Def. Br., Ex. E ("Phillips Dep.") at 17-18. He is not an expert in the area of post-traumatic disorder or in the treatment or diagnostic criteria of PTSD, although he occasionally encounters the condition in his patients. He has had no formal training in that field aside from a medical school course in psychiatry. Id. at 91. His initial report says he anticipates rendering opinions in the fields of allergy, immunology, and epidemiology, although he offers opinions beyond this area. Def. Br., Ex. B.

On the issue of the plaintiff's PTSD diagnosis, Dr. Phillips fails under the first TMI Litigation prong: he is not qualified to offer expert testimony that the plaintiff suffers from PTSD or the causes of that ailment. In re TMI Litig., 193

F.3d at 664. He is not an expert by skill or training in the area of diagnosis or causation of PTSD, and occasionally treating patients who have the disorder does not qualify him as an expert. See Ferris v. Pa. Fed'n Broth. of Maint. of Way Empls., 153 F. Supp. 2d 736, 743-44 (E.D. Pa. 2001) (practicing pathologist specializing in pain management did not have the expertise in psychology to testify about the plaintiff's diagnosis of depression or the cause of that disorder).

Dr. Phillips is likewise not qualified to opine on the defendant's training of its flight attendants or their ability to address the plaintiff's allergic reaction on the flight. As an expert in the area of allergy, he may testify about the symptoms and treatment of an allergic reaction, but he cannot opine on the training or abilities of the flight attendants.

The Court will grant the defendant's Daubert motion as to Dr. Phillips.

IV. Motion to Strike

The defendant moves to strike a supplemental report by Dr. Phillips. The supplemental report was produced on February 27, 2012 as part of the plaintiff's response to the defendant's Daubert and summary judgment motions. The plaintiff argues that the report is a supplement to Dr. Phillips's original report produced during discovery.

14

An expert report can be supplemented to correct errors or omission. Fed. R. Civ. P. 26(a)(3). The rule cannot be used to amend an expert report to avoid summary judgment. <u>Gallagher v. So. Source Packaging, LLC</u>, 568 F. Supp. 2d 624, 630-31 (E.D.N.C. 2008) (collecting cases holding this). The supplemental report is prejudicial to the defendant, as it contradicts Dr. Phillips's deposition testimony relied upon by the defendant in its <u>Daubert</u> motion and motion for summary judgment.

The Court will grant the defendant's motion to strike.

V.  <u>Motion to Compel</u>

Finally, the Court will grant in part the defendant's motion to compel the production of compensation and medical records. As discussed at oral argument on June 6, 2012, most of the issues in this motion have been resolved by the parties.

The defendant seeks documentation supporting tax returns produced to the defendant in December of 2011. The plaintiff shall produce any documentation of compensation within three weeks of her return to Italy.

An appropriate order will issue.